IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:

Evan R. Taylor
Telitha L. Taylor,                                    Case No. 20-40476-JJR7

       Debtors.

---

Sherrod & Brooks, LLC,

       Plaintiff,

v.                                                            AP No. 20-40014-JJR

Evan R. Taylor and
Telitha L. Taylor,

       Defendants.

**MEMORANDUM OPINION DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENTAND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

     The complaint in this adversary proceeding is styled, "Complaint to Determine Dischargeability of Certain Debts" (AP Doc. 1). The complaint states that its claims fall under Code § 523, but does not specify a specific subsection. The first and only count is styled "Fraud" and the court reads the complaint as attempting to set out a claim that the debtor-defendants, Evan and Telitha Taylor (the "Taylors") obtained property or an extension of credit from Sherrod & Brooks, LLC (the "Seller") by a false representation or actual fraud, as well as the use of a materially false statement in writing respecting the Taylors' financial condition made with the intent to deceive and upon which the Seller reasonably (or justifiably) relied. The court, therefore, interpreted the complaint as making claims under Bankruptcy Code (11 U.S.C. § 101, et seq.,

herein "Code") § 523(a)(2)(A) and (a)(2)(B). The Taylors answered the complaint by denying liability under any contract and denying fraudulent intent. They admitted the underlying transaction involved the sale by the Seller of a retail pizza restaurant to Taylor Collaborative, LLC, a limited liability company (the "LLC"), owned and controlled by the Taylors, and that a portion of the purchase price was to be paid over time in installments. They admitted the content of the documents evidencing the transaction as speaking for themselves and asserted the statute of frauds as an affirmative defense. (AP Doc. 19.)

The Seller filed a Motion for Partial Summary Judgment ("Seller's Motion" AP Doc. 27) under Fed. R. Bankr. P. 7056, asking the court to rule that the Taylors were liable for a breach of contract, with the issues of damages and dischargeability reserved for trial. The court issued a scheduling order setting a deadline for the Taylors' response. They filed a timely response (Doc. 31) as well as their own Motion for Summary Judgment ("Taylors' Motion" AP Doc. 32) seeking judgment in their favor on all claims asserted in the complaint. The court issued a scheduling order giving the Seller an opportunity to respond to the Taylors' Motion, but no response was filed. The court took the Motions under advisement. After considering the Motions and submissions in support thereof, the matters of record in the bankruptcy case, as well as the relevant statutory and case law, the Seller's Motion is due to be denied and the Taylors' Motion is due to be granted. While Fed. R. Bankr. P. 7052 expressly provides that the court is not required to state separate findings and conclusions in ruling on a motion under Fed. R. Bankr. P. 7056, the court sets forth its findings and conclusions herein to the extent necessary to determine the Motions.[1]

---

[1] This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (b)(2)(I), and both parties have appeared and consented to this court's jurisdiction. (AP Doc. 20.) Therefore, the court has authority to enter a final order.

**Facts:**

Before the bankruptcy case was commenced, the Seller had sued the Taylors in state court. The state court complaint ("State Complaint" AP Doc. 38) set out the Seller's version of the operative facts involving the parties' transaction and the execution of the documents evidencing their agreements. The Seller's claims are primarily based on principles of estoppel.[2] It is undisputed that the Seller financed the sale of a pizza restaurant to Taylor Collaborative, LLC, which is owned entirely by the Taylors. The underlying documents included a purchase agreement, promissory note, sublease agreement, and personal guaranty. The representations in the purchase agreement, promissory note, sublease agreement, and personal guaranty are the only written representations in the record.[3] The Seller's Motion does not specify which of the four written agreements were allegedly admitted as having been breached by them in their answer to the State Complaint ("State Answer" AP Doc. 27 Ex. A). Thus, the court must look to the State Complaint to discern what factual allegations were made that could be the subject of the Seller's

---

[2] Significantly, the Seller filed no affidavit or other evidentiary support for its Motion regarding breach of contract and made no attempt to establish the material facts in any way other than through its estoppel theory.

[3] The Taylors' evidentiary submission (AP Doc. 30) contains copies of all four documents signed at closing, amended Schedule E/F in the underlying bankruptcy, the case action summary from the state court case, and the affidavit of Telitha Taylor. The face of the documents, as well as the affidavit, show that the purchase agreement, promissory note, sublease agreement, and personal guaranty were prepared, and their execution notarized, by the Seller's attorney. The purchase agreement (AP Doc. 30 Ex. 1) contains Section VII (A) entitled "Entire Agreement—No Parol Agreements – Modifications"; the promissory note (AP Doc. 30 Ex. 2) contains a section entitled "Merger;" and the personal guaranty (AP Doc. 30 Ex. 3) recites that it is "subject to the terms and remedies" of the purchase agreement (which in turn includes a merger clause). The sublease agreement (AP Doc. 30 Ex. 4) does not have an explicit merger clause, but provides at Section 18.4 that "[n]o amendment, modification or alternation [stet] of the terms hereof shall be binding unless the same be in writing, dated subsequent to the date hereof, and duly executed by the parties hereto."

estoppel argument. For purposes of the Seller's Motion, which is limited only to whether the Taylors are estopped to deny a breach of contract, the court must view the State Complaint allegations—to the extent they were admitted as a matter of law in the State Answer—in the light most favorable to the Taylors if the facts as alleged are subject to more than one reasonable inference. If those allegations have not been admitted as a matter of law, then they are entitled to no presumed validity because they are not supported by an affidavit or otherwise in support of the Seller's Motion. For purposes of the Taylors' Motion, which attempts to cover every aspect of the adversary complaint, including not only the existence of a debt or a breach of contract but also the dischargeability of any such debt, all reasonable inferences of the evidence submitted by the Taylors in support of their Motion must be considered in favor of the Seller. The contents of the State Complaint, State Answer, and transaction agreements are not disputed.

The transaction agreements contained recitals which unambiguously enumerated the LLC and the Seller as the only parties to those documents. The signatures on each of those three documents were fully consistent with the parties' recitals and each was signed unequivocally by the Seller's and the LLC's principals (i.e., the Taylors) in purely representative capacities and not as individuals. The personal guaranty was signed by the Taylors in their individual capacities and stated:

> For good consideration, and as an inducement for [the Seller] to extend terms as described in that certain Purchase Agreement dated _____ [stet], 2019 it is hereby agreed that the undersigned do hereby guaranty to Seller the prompt, punctual and full payment *of all monies now or hereinafter due Seller from the undersigned in their personal capacities.* This Personal Guaranty shall be considered an integral part of the Purchase Agreement to which it is hereafter attached and subject to the terms and remedies therein.
>
> . . .

> The obligations of the undersigned shall be primary and not secondary or subject in any way *to the pursuit of remedies as against Evan Taylor and Telitha Taylor prior to enforcing its rights under this guaranty against the undersigned.*

(AP Doc. 30 Ex. 3 (emphasis added).) In the two places where the debt being guaranteed was described, the personal guaranty referred to debts of the "undersigned in their personal capacities" and provided that the pursuit of remedies against the guarantors, who were jointly and severally liable thereunder, was not secondary in any way to the pursuit of remedies against "Evan and Telitha Taylor" as the parties whose personal debts were guaranteed. In other words, the Taylors merely guaranteed their own debts owing to the Seller, but there was no document evidencing any debt owing personally by the Taylors to the Seller. Without going outside the four corners of the guaranty, it adds absolutely no support to the claim that the Taylors are indebted to the Seller.

The State Complaint recites that after closing, the LLC defaulted within seven months, and the Seller issued a written notice of default. The Taylors then notified the Seller that they were abandoning the business, returned the keys, and made no further payments. (AP Doc. 38 ¶ 6.) The Seller accelerated the amounts due under the promissory note and sublease agreement and sued the Taylors along with their LLC in state court alleging breach of contract, negligent misrepresentation, reckless misrepresentation, and fraud.

The State Complaint alleged that the Taylors induced the Sellers by representing that the Taylors would make payments on time, maintain the business in good order, and faithfully uphold the terms of the "Agreement" (which is defined in the State Complaint as meaning the purchase agreement and sublease agreement collectively). The State Complaint's first count for breach of contract further alleged that the Taylors, in their individual capacities, induced the Seller to enter into the purchase agreement by agreeing to sign a personal guaranty of the promissory note. Although the pleading uses the plural "Defendants" throughout, it appears the claims in this count

for breach of contract were claims only under the personal guaranty insofar as the Taylors' personal liability is concerned. Nowhere does the State Complaint aver that Taylors were party to the purchase agreement, promissory note, or sublease agreement in their individual capacities.

In the next count, the State Complaint alleged negligent misrepresentation and recited that the Taylors "made certain representations that were not reasonable regarding their ability to pay . . . and the ability to care for the Business," which proximately led to the Seller's damages. No specific facts were alleged under this count as to what the representations were, when or how they were made, the nature of the reliance as justifiable or reasonable, or how the reliance proximately led to any particular damages. At best, this count can be read as referring back to the "Facts and Background" section of the State Complaint which enumerated three representations: that the Taylors and the LLC would (1) pay on time, (2) maintain the business in good order, and (3) uphold the purchase agreement and sublease agreement terms. No written representations by the Taylors or the LLC regarding their financial condition, ability to pay, or ability to conduct a business appear in the State Complaint and the Seller failed to come forward with any written representations in response to the Taylors' Motion.

Finally, the State Complaint alleged fraud in the inducement, stating, "The claims made by the [Taylors and their LLC] during negotiations to purchase the Business" were material, were reasonably relied upon, and were made with the intent to deceive. The State Complaint did not specify what "claims" were made by the Taylors to form the basis of the alleged fraud, although this count recites generally that the Taylors, along with the LLC, agreed that the Taylors would sign a personal guaranty of the promissory note and held themselves out as being "solvent, responsible and capable of following through on all obligations incurred in the purchase of the Business." This count also alleged fraud after the debt was incurred, citing oral and written false

representations by the Taylors and their LLC (again, with no specificity) that payments would be made, that the debt was being refinanced, and that they would operate the business as agreed. No such writing was attached to the State Complaint, nor submitted in response to the Taylor's Motion.

The Taylors filed their State Answer pro se in their individual capacities, but with the help of a licensed attorney as noted thereon. (AP Doc. 27 Ex. A.) The State Answer contained one sentence and made no express denials, but stated, "I may owe some of the amount but not all of it and would like the court to determine the amount." The Taylors filed their chapter 7 bankruptcy shortly after filing the State Answer, and prior to any adjudication by the state court.

**Summary Judgment Standard:**

A motion for summary judgment on the merits of the complaint is controlled by Fed. R. Bankr. P. 7056, which provides that Fed. R. Civ. P. 56 applies in bankruptcy adversary proceedings. The court may grant summary judgment to a moving party when that party demonstrates "there is no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering the merits of a motion for summary judgment, the court's role is not to determine the truth of the matter asserted or the weight of the evidence, but to determine whether the factual disputes, if any, raise genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In making this determination, the facts are to be considered in a light most favorable to the non-moving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Allen v. Board of Public Educ.*, 495 F.3d 1306 (11th Cir. 2007).

> This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an

> essential element of his or her claim. The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to his claims, and on which he bears the burden of proof at trial. To satisfy this burden, the nonmovant cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried, and if not, whether the movant is entitled to a judgment as a matter of law. It is the substantive law that identifies those facts which are material on motions for summary judgment.
>
> When the court considers a motion for summary judgment it must refrain from deciding any material factual issues. All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the nonmovant. The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case."

*Brown v. Mendel*, 864 F. Supp. 1138, 1142–43 (M.D. Ala. 1994), *aff'd sub nom. Brown v. Enstar Grp., Inc.*, 84 F.3d 393 (11th Cir. 1996) (internal citations omitted). "Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

### Code § 523(a)(2)(A) and (a)(2)(B):

Code § 523(a)(2)(A) and (a)(2)(B) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— ...
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> >
> > (B) use of a statement in writing —

Case 20-40014-JJR   Doc 39   Filed 10/19/20   Entered 10/19/20 09:04:35   Desc Main
Document      Page 8 of 17

    (i) that is materially false;
    (ii) respecting the debtor's or an insider's financial condition;
    (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
    (iv) that the debtor caused to be made or published with intent to deceive;

11 U.S.C. § 523(a)(2)(A), (a)(2)(B). The provisions of Code § 523(a)(2)(A) and (a)(2)(B) are mutually exclusive: "In addition to the writing requirement, § 523(a)(2)(B) requires a creditor to show reasonable reliance. 11 U.S.C. § 523(a)(2)(B)(iii). Section 523(a)(2)(A), by contrast, requires only the lesser showing of 'justifiable reliance.' *Field v. Mans,* 516 U.S. 59, 61, 70–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1763, n.6 (2018).

### **The Seller's Motion for Partial Summary Judgment for Breach of Contract:**

  The Seller's Motion asked the court to rule that the Taylors admitted breach of contract as a matter of law under an unspecified estoppel theory based on their State Answer. The Seller's Motion did not, however, specify the "contract" that was breached by the Taylors individually, and there are no less than four possibilities under the State Complaint—the purchase agreement, the promissory note, the sublease agreement, and the personal guaranty. In response to the Seller's Motion seeking partial summary judgment, the Taylors argued that despite their failure to affirmatively deny their liability under any contract in their pro se State Answer, the contents of the documents on their face should be determinative of this issue in their favor as a matter of law.

  As mentioned above, the Seller's single theory in support of its partial motion for summary judgment for breach of contract was one of estoppel based on the Taylors' State Answer (Ex. A to the Seller's Motion). The Seller did not support this theory with an explanation of what it meant by "estoppel" nor did it explain the elements of its estoppel claim, nor did it cite any case law or statutory reference to aid in interpreting its argument. In response, the Taylors addressed three

possible interpretations of the Seller's use of the term "estoppel": claim preclusion (res judicata), issue preclusion (collateral estoppel), and judicial estoppel.

If this court were looking at the preclusive effect of a state court judgment, Alabama's preclusion rules would apply. *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1074 (11th Cir. 2013). Under Alabama law, claim preclusion (res judicata) exists when four elements are satisfied: "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." *Chapman Nursing Home, Inc. v. McDonald,* 985 So. 2d 914, 919 (Ala. 2007). Alabama law supports issue preclusion (collateral estoppel) when three elements are met: "(1) [t]he issue must be identical to the one involved in the previous suit; (2) the issue must have been actually litigated in the prior action; and, (3) the resolution of the issue must have been necessary to the prior judgment." *Martin v. Reed,* 480 So. 2d 1180, 1182 (Ala. 1985). Under either rubric, preclusive effect is only possible if a judgment has been entered. The Seller put forth no evidence that a judgment had been entered in state court, while the Taylors' evidentiary response included copies of the case action summary and of an Order staying the case and canceling a hearing on a motion for summary judgment, at least as to the Taylors, based upon their filing the instant bankruptcy case. (AP Doc. 30 Ex. 6.) On this record, there is no question that the state court had not entered a judgment against the Taylors. Accordingly, neither claim preclusion nor issue preclusion could apply to the Taylors' state court answer as a matter of law.

If the Seller's assertion is one of judicial estoppel, the standard is "whether (1) [a] party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were calculated to make a mockery of the judicial system." *Slater v. U.S. Steel Corp.,* 871 F.3d 1174, 1181 (11th Cir. 2017) (*en banc*) (internal quote and citation omitted). The Taylors'

State Answer was not under oath or penalty of perjury. Accordingly, the Taylors' State Answer does not support judicial estoppel as a matter of law under the Eleventh Circuit's binding precedent, even if it were inconsistent with their denial of liability under any contract in the instant adversary proceeding.[4] This result does not change even in light of Ala. R. Civ. P. 8(d), which provides in part that "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." Even if the Taylors' State Answer were properly read as an admission of every factual averment in the State Complaint, it was not under oath or otherwise verified, and thus judicial estoppel would not bar them from defending the claims in this adversary proceeding. If the estoppel argument is aimed at the schedules, which were signed by the Taylors under penalty of perjury, the Amended Schedule E/F shows that the Seller's claim was listed as "disputed" and thus is not inconsistent with their denying all liability. (AP Doc. 30 Ex. 5.)

In summary, the court can only guess what theory the Seller intended to assert by its use of the general term "estopped" in support of its Motion. Nonetheless, for the reasons set forth above, the Taylors are not estopped from denying liability under any of the contracts at issue, under any estoppel theory the court can conjecture the Seller may have intended to assert. Accordingly, the Seller's Motion, seeking partial summary judgment as to the Taylors' liability for breach of contract, is DENIED.

---

[4] If the State Answer had been made under oath, the court would find that the element of inconsistency cannot be satisfied on this record. The Taylors' pro se answer, "I may owe some of the amount but not all of it and would like the court to determine the amount" is consistent with the Taylors' position that they have no personal liability under any contract even if it were read with every reasonable inference in favor of the Seller. "I may owe some" does not reasonably foreclose an argument that none is owed under any reading. The answer was treated as a denial on the state court case action summary on Alacourt, which shows "ANSWER OF COMP DENIED ON 2/18/2020" for both individual defendants. (AP Doc. 30 Ex. 6.)

**The Taylors' Motion:**

The Taylors filed their own Motion for Summary Judgment, seeking judgment in their favor as to every issue raised in this adversary proceeding. In support of the Taylors' Motion, they submitted the affidavit of Telitha Taylor, copies of the four agreements signed at closing, the amended Schedule E/F in the underlying bankruptcy case, the state court's order canceling a pending summary judgment hearing in light of the bankruptcy case, and the case action summary for the state court case. (AP Doc. 30.) The Taylors supported their Motion by asserting that the purchase agreement documents on their face are determinative as a matter of law that there is no debt or other contractual obligation to be performed between the Taylors individually and the Seller. The Taylors also argued that the claims for fraudulent inducement and fraud after the transaction fail as a matter of law under the undisputed record now before the court on the parties' summary judgment motions.

The court agrees the documents themselves are clear, unambiguous, and leave no room for inference. The purchase agreement, promissory note, and sublease agreement were unequivocally entered into by the LLC and not by the Taylors individually, as shown by the agreements' recitals and the form of their execution. *See* Ala Code 7-3-402(b)(1)). Additionally, Alabama Code § 10A-5A-3.01 provides that members of an LLC do not share liability in contract or tort with the LLC simply by virtue of their status as members; there must be a contractual obligation in the members' individual capacity for liability to exist. There is no personal liability for the Taylors under the purchase agreement, promissory note, or sublease agreement.

The personal guaranty is likewise unambiguous within its four corners and is not susceptible to reasonable inference otherwise. The personal guaranty was prepared by the Seller's

representative, was notarized by the Seller's attorney at closing, and recited--in more than one place, and with perfect consistency--that the Taylors each individually guaranteed the performance of any obligations either of them owed the Seller *individually*. The personal guaranty does not purport to make the Taylors responsible as guarantors for the debts of their LLC. The personal guaranty was expressly made subject to the terms of the purchase agreement, which included the merger of any prior understandings and a disavowal of any parol agreements not contained in the text of the written document (which would preclude any undocumented agreement for the Taylors to personally guaranty the LLC's obligations). Additionally, despite an opportunity to do so, the Seller filed nothing in response to the Taylors' Motion and did not attempt to create an issue of fact nor dispute that the personal guaranty, as prepared by the Seller's representative, reflected the parties' intent. The personal guaranty is internally consistent and unambiguous and is not subject to more than one reasonable interpretation within its four corners nor within the context of the transaction documents as a whole. Simply stated, the Taylors did not guaranty any obligations of their LLC by virtue of its execution. Accordingly, the Taylors are not contractually or otherwise obligated in their individual capacities under any of the four agreements that could be the basis for the Seller's nondischargeability complaint and they owe no debt to the Seller as a result.

### **Section 523(a)(2)(A):**

As the Eleventh Circuit has recently explained:

> Section 523(a)(2)(A) exempts from a debtor's discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent *obtained by* . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A) (emphasis added). That is, "it prevents discharge of 'any debt' respecting 'money, property, services, or . . . credit' that the debtor has fraudulently obtained."

*SE Property Holdings, LLC v. Gaddy (In re Gaddy)*, --- F.3d ---, ---- (11th Cir. Sept. 29, 2020) (citing *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998)) (alteration in original). The Taylors argue

that there was no credit extended to them individually, so there was no "debt" between the parties, much less any debt "obtained by" false representation or actual fraud. The court agrees, based on its ruling that the Taylors are not individually parties to (nor personally liable by way of guaranty for) the debt owing by their LLC under the promissory note, purchase agreement, or sublease agreement. Thus, there is no claim or debt owing by the Taylors to the Seller upon which Code § 523(a)(2)(A) could operate. To the extent the Seller's complaint in this proceeding could be read, as a stretch, to allege that the Taylors obtained the pizza business and the subleased premises as "property" by way of their fraud, that argument also fails as a matter of law. The Taylors did not obtain that property—their LLC did.

Even if the court were mistaken about the lack of an underlying debt being incurred or property being acquired by the Taylors, it would nonetheless find no related fraud or misrepresentation on the record before it. The Taylors' Motion is supported by the affidavit of Telitha Taylor in which she states, "At no time during the negotiations leading up to the sale of the business by Plaintiff to Taylor Collaborative, LLC, or thereafter, did Evan Taylor or I make any false representations to the Plaintiff. In particular, neither Evan Taylor nor I made any false statements or representations as alleged by the Plaintiff in its complaint filed in [the adversary proceeding]." (AP Doc. 30 Ex. 7.) The affidavit is unrebutted. The Seller filed nothing in response to the Taylors' Motion and did not attempt to dispute Telitha Taylor's affidavit. The affidavit offers a conclusory denial of any fraud or misrepresentation, which might be insufficient to rebut specific factual allegations, had any been made, but which is entirely sufficient to defeat the conclusory statements in the adversary complaint (which very closely mirror the statements in the State Complaint). The court must consider whether the Taylors are entitled to judgment in their favor on the basis of the record before it, taking all reasonable inferences in the light most favorable

to the Seller, even in the absence of any response by the Seller. Having done so, the court finds that, even if a predicate debt or acquisition of property by the Taylors had existed, the Taylors would nonetheless be entitled to judgment in their favor that no fraud or misrepresentation was made by either of them under Code § 523(a)(2)(A) based on the unrefuted affidavit of Telitha Taylor and the contents of the transaction documents.

To take the "if only" analysis one step further, had the court found the Taylors were individually parties to any of the four agreements in the record, and found them to be in breach of contract, and had the Seller put forth some evidence to substantiate the allegedly false and fraudulent statements set out in the adversary complaint (which under a generous reading are more covenants to perform than statements of fact—a promise to pay on time, to maintain the business in good order, to sign a personal guaranty, and to adhere to the terms of the purchase and sublease agreements), those statements would still not amount to fraud or misrepresentation under Code § 523(a)(2)(A). The complaint does not allege that the Taylors' statements were intentionally false when they were made. S*ee, e.g., Acceptance Loan Co. v. Christopher (In re Christopher)*, 578 B.R. 842 (Bankr. S.D. Ala. 2017) (quoting *Am. Express Travel Related Servs. Co. v. McKinnon,* 192 B.R. 768, 771 (Bankr. N.D. Ala. 1996) and finding that the analysis of three possible types of fraud in Code § 523(a)(2)(A) somewhat overlap, discussing the elements of each, including the importance of intent to deceive, and pointing out that "in accepting an extension of credit, a debtor represents only that he intends to abide by the agreement . . . and 'has made a false representation only if, at the time the debt is incurred, he intends to breach his agreement.'").

In addition, the Taylors indisputably signed the personal guaranty that the Seller prepared and put before them at closing.[5] The adversary complaint says that payments were made and the business was operated for a period of approximately seven months before default. The complaint does not allege that the business failure was due to the Taylors' willful incompetence, known to them before the sale closed, as opposed to some economic factor. The averments in the adversary complaint, had they been supported with evidence in response to the Taylors' Motion, would establish an issue of breach of contract but not fraud.

Finally, false statements allegedly made by the Taylors regarding a refinancing of the obligation, which the Seller says it relied upon after default, were not made in connection with the debt being incurred or property being obtained and thus would not support nondischargeability under Code § 523(a)(2)(A) (even if the debt had been incurred or property obtained by the Taylors individually, which the court has found did not happen). *See SE Property Holdings*, --- F.3d at --- (explaining that the statutory requirement "obtained by" means the fraudulent acts alleged must have led to the creation of the debt, and that fraudulent acts following the creation of a debt do not support nondischargeability of that debt under Code § 523(a)(2)(A)).

---

[5] To the extent the complaint here could be read to allege that the Taylors had a contractual commitment to personally guaranty their LLC's performance under the purchase agreement, promissory note, and sublease agreement, which contractual commitment they fraudulently avoided or breached, that argument fails as a matter of law. First, the documents signed at closing included a personal guaranty, prepared by the Seller's agent, and the documents foreclosed via their merger language the possibility that a different personal guaranty was in the offing. Even if a different personal guaranty were contemplated, the Taylors correctly cite Alabama's version of the Statute of Frauds, codified at Ala. Code § 8-9-2(3), which mandates that any such contract to stand for the debts of another must be in writing to be enforceable, and correctly note that any such unwritten contract that is void for lack of a writing will not support a claim for promissory fraud. *See Cox Nuclear Pharm., Inc. v. CTI, Inc.*, 478 F.3d 1303, 1310 (11th Cir. 2007) (citing *Bruce v. Cole*, 854 So. 2d 47, 58 (Ala. 2003)).

**Section 523(a)(2)(B);**

The adversary complaint referred to unspecified false and fraudulent misrepresentations made by the Taylors regarding their solvency and financial ability, and also said that some of those misrepresentations were made in writing. To the extent any fraudulent statements regarding "financial condition" are alleged (and none are alleged with any specificity), Code § 523(a)(2)(B) provides that those statements must be in writing and must have been made as part of a debt being incurred or property being obtained in order to support nondischargeability. Here, there is neither a debt nor a transfer of property between the Seller and the Taylors as discussed above, so the predicate fails as with the claims under (a)(2)(A). Even if there were a debt or property transfer to the Taylors, the record shows there is nothing in writing regarding the Taylors' financial condition or otherwise, aside from the four agreements (and those agreements that are in the record foreclose reliance on any other writings by their terms and merger clauses, had any other writings been put forth). Accordingly, to the extent the complaint could be read as alleging nondischargeability of a debt based on a false statement in writing regarding financial condition under Code § 523(a)(2)(B), the Taylors are also entitled to summary judgment in their favor that no such debt exists, no such property was transferred, and no such writing exists on the record before the court.

**CONCLUSION:**

For the reasons set forth above, the Seller's Motion (AP Doc. 27) is due to be DENIED and the Taylors' Motion (AP Doc. 32) is due to be GRANTED, and summary judgment is due to be entered in favor of the Taylors as to every claim set forth in the adversary complaint, which judgment the court shall enter by separate order.

So done this 19th day of October 2020.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE